KENNETH S. HARTBARGER, Plaintiff-Appellant, *v.* COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District    No. 81-373

Opinion filed May 19, 1982.—Rehearing denied June 14, 1982.

J. Thomas Long and Christopher B. Hunter, both of Farrell, Heil, Long & St. Peters, P. C., of Godfrey, for appellant.

Stephen W. Thomson, of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

On August 21, 1979, Kenneth Hartbarger was injured in an automobile collision involving an uninsured motorist. On that date, he was covered by

automobile insurance policy number A12A1067618, issued by Country Mutual Insurance Company. For bodily injury liability, the limits of the policy were $200,000 for each person and $500,000 per occurrence, with a limitation of $100,000 per occurrence for property damage liability. Policy A12A1067618 also indicated uninsured motorist coverage at a maximum of $100,000 for each person and $300,000 per occurrence.

Hartbarger was additionally covered by umbrella policy number U511011, also issued by Country Mutual. It provided for a $1,000,000 coverage limit and listed the above-mentioned automobile policy among the underlying insurance policies to which the umbrella coverage would attach.

In February 1981, Hartbarger filed a complaint for a declaratory judgment against Country Mutual in the circuit court of Madison County. In count II of that complaint, he alleged that he had been injured in an amount greater than that provided for in the uninsured motorist coverage of policy A12A1067618, and that since the umbrella policy included that automobile policy without specifically excluding uninsured motorist coverage, he was therefore entitled to compensation under the umbrella policy. The plaintiff later amended this count of the complaint to include the allegation that an agent for Country Mutual had informed him that the umbrella policy provided coverage for the "entire" automobile policy. Plaintiff's affidavit to that effect was attached to the amended count II.

Country Mutual moved for a summary judgment on the plaintiff's complaint. Under count II, it was argued that the umbrella policy, by its terms, provided only liability insurance, not uninsured motorist protection, and that the plaintiff was entitled to compensation only according to the terms of the uninsured motorist clauses of policy A12A1067618. After hearing arguments from counsel, the court held that the umbrella policy was unambiguous in providing only for liability coverage, and therefore judgment was entered for Country Mutual on count II, as it was on the rest of the complaint. The plaintiff has perfected this appeal only from the judgment against him on count II.

In this court, the plaintiff argues, as he did at trial, that the umbrella policy was ambiguous as to whether it provided uninsured motorist coverage, and that therefore he should have been permitted to introduce extrinsic evidence to resolve that ambiguity. The parties have not cited any Illinois authority on the issue of when an umbrella policy will be construed as including uninsured motorist coverage. According to our research, they are correct in characterizing this question as one of first impression in this State.

However, the plaintiff's argument was raised in *Matarasso v. Continental Casualty Co.* (1981), 82 App. Div. 2d 861, 440 N.Y.S.2d 40 (mem. op.). The plaintiffs in *Matarasso*, as here, were covered by an umbrella

liability policy which listed an automobile insurance policy as part of the underlying coverage. The declarations contained in the umbrella policy did not include uninsured motorist coverage. When the plaintiffs were injured in an accident involving an uninsured motorist, they recovered the maximum amount under the uninsured motorist portion of the automobile policy. They then sought recovery under the umbrella policy. In rejecting the plaintiffs' claims, the court premised its decision on the plain language of the umbrella policy, and noted that it incorporated the underlying policies only insofar as they provided protection against liability for damages to third parties. A different interpretation, the court stated, would distort the purpose of the umbrella policy.

The plaintiff points to two features of the umbrella policy in this case which, it is claimed, render it ambiguous. First, he notes that uninsured motorist coverage was not specifically listed in the exclusions to the umbrella policy. Second, it is argued that since the defendant, in that policy, agreed "to indemnify the insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay," he should be reimbursed for his own medical expenses, which he was legally obligated to pay.

In response, the defendants urge us to recall that the umbrella policy was entitled a "personal and professional umbrella liability policy," and that on the declarations sheet, policy A12A1067618 was described as an "automobile liability policy" and in the column for that policy's limits of liability, the figures "200/500/100" were placed. They also state that the definition of coverage, quoted in part in the previous paragraph, provides in full as follows:

> "The company agrees to indemnify the insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay:
>
> > (a) Personal Liability. As damages because of personal injury or property damage caused by or arising out of an occurrence happening anywhere in the world during the policy period;
> >
> > (b) Professional Liability. As damages because of injury arising out of:
> >
> > > (1) malpractice, error or mistake of the named insured, or of a person whose acts or omissions the named insured is legally responsible in rendering or failing to render professional services; or;
> > >
> > > (2) acts or omissions of the named insured as a member of a formal accreditation or similar professional board or committee of a hospital or professional society;

committed during the policy period in the practice of the named insured's profession as stated in Item 5 of the declarations."

The plain wording of the entire policy, the defendant contends, compels the conclusion that it provides only excess liability coverage and not uninsured motorist protection.

The Illinois Supreme Court has recently stated:

"Generally speaking, if a provision of an insurance contract can reasonably be said to be ambiguous it will be construed in favor of the insured and against the insurer, who was the drafter of the instrument. [Citations.] However, if the provisions of the insurance policy are clear and unambiguous there is no need for construction and the provisions will be applied as written. [Citations.] All the provisions of the insurance contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. [Citations.]" (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203, 1205.)

According to these tenets of interpretation, we believe that the result reached in *Matarasso* should also obtain in this case. An umbrella liability policy is generally designed to protect the insured from a judgment against him in an amount greater than that provided for in the underlying policies (*Trinity Universal Insurance Co. v. Metzger* (Ala. 1978), 360 So. 2d 960, 962), and the language of the present policy directly accomplishes that purpose. The insurer is bound to indemnify the insured for sums he is obligated to pay as damages, and need not reimburse him for items which he is legally obligated to pay, but not as damages. Moreover, the failure of the insurer to list uninsured motorist coverage in the exclusions to the umbrella policy does not create any ambiguity in view of the numerous terms limiting the umbrella policy to excess liability coverage. As the defendant correctly argues, exclusions are relevant in construing an insurance policy only when the policy provides coverage in the first place. (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 294 N.E.2d 7.) The umbrella policy did not provide uninsured motorist protection, and thus there was no need to exclude it.

Finally, the plaintiff argues that the umbrella policy is an automobile policy, which, under section 143a of the Illinois Insurance Code (Ill. Rev. Stat. 1979, ch. 73, par. 755a), must furnish uninsured motorist coverage. That statute provides, in part, that

"* * * no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State * * * unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7—203 of the

Illinois Vehicle Code for the protection of persons insured there-
under who are legally entitled to recover damages from owners or
operators of uninsured motor vehicles and hit-and-run motor
vehicles * * *."

In construing a similar statute, the Alabama Supreme Court held that
an umbrella policy which provided excess liability coverage, and which
was issued as a supplemental policy to cover existing primary policies
which themselves complied with the uninsured motorist law, was not
required to provide uninsured motorist coverage. (*Trinity Universal
Insurance Co. v. Metzger* (Ala. 1978), 360 So. 2d 960.) The court reasoned:

"Automobile liability policies and motor vehicle liability policies
insure against the risk of loss through the operation of specific
automobiles. An umbrella policy, on the other hand, is fundamen-
tally excess insurance designed to protect against a catastrophic
loss. Before an umbrella policy is issued, a primary policy (the
'underlying policy') must be in existence and this primary policy
must by law provide uninsured motorist coverage. The umbrella
policy assumes a risk of much less frequent occurrence, i.e. the risk
of judgments in excess of primary policy limits, and accordingly
carries premiums which reflect the lesser magnitude of this risk.
The umbrella policy issued by Trinity Universal is an inherently
different type of insurance from an automobile or motor vehicle
liability policy, and consequently does not come within the scope
of the uninsured motorist statute." (360 So. 2d 960, 962.)

The *Matarasso* court reached the same result under the New York In-
surance Law, and commented that the insureds had received the protec-
tion of the mandatory uninsured motorist coverage statute through their
primary automobile liability policy and were thus not left without the
relief anticipated by that law. *Matarasso v. Continental Casualty Co.*
(1981), 82 App. Div. 2d 861, 440 N.Y.S.2d 40 (mem. op.); accord,
*O'Hanlon v. Hartford Accident & Indemnity Co.* (3d Cir. 1981), 639 F.2d
1019, 1026-27 (applying Delaware law).

In other jurisdictions, it has been stated that an umbrella policy is
required to include uninsured motorist protection under the uninsured
motorist insurance statutes of those States. (*Aetna Casualty & Surety Co.
v. Green* (Fla. App. 1976), 327 So. 2d 65; *St. Paul Fire & Marine Insurance
Co. v. Goza* (1976), 137 Ga. App. 581, 224 S.E.2d 429 (*dicta*).) We are not
persuaded by the reasoning employed in those decisions.

The purpose of the Illinois uninsured motorist insurance statute, as it
existed when the policies at bar were entered into, was to compensate the
insured to at least the same extent as he would have been had he been
injured by a motorist who had complied with the Financial Responsibility
Law. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401

N.E.2d 539.) Thus, an insured receives the full protection contemplated by statute when he purchases the underlying automobile policy, and whatever additional coverage he does or does not obtain in an umbrella policy is a matter without the scope of that law.

As the Alabama Supreme Court noted in *Metzger*, an umbrella liability policy is entirely different from an automobile policy. It is obvious that the present umbrella policy was intended by both parties to protect the insured against excess judgments, and the risks and premiums were calculated accordingly. To require that policy to furnish uninsured motorist coverage would work a substantial revision of that policy. Section 143a of the Insurance Code was enacted to insure a minimum amount of uninsured motorist protection. It does not give us the authority to rewrite the unambiguous provisions of the umbrella policy in order to expand the maximum coverage afforded to the plaintiff, and we will not do so.

We agree with the defendant that neither the language of the umbrella policy nor section 143a of the Illinois Insurance Code gives rise to uninsured motorist coverage in that policy. It is for these reasons that we affirm the judgment of the Circuit Court of Madison County in granting summary judgment for the defendant on count II of the plaintiff's complaint.

Affirmed.

KARNS, P. J., and JONES, J., concur.