[Civ. No. 33234. Fourth Dist., Div. Two. Dec. 28, 1984.]

VIDE GLAVINICH, JR., et al., Plaintiffs and Respondents, v.
COMMONWEALTH LAND TITLE INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Edward J. Wise for Defendant and Appellant.

Maroney, Demchuk, Brandt & Krueger and Richard E. Holdaway for Plaintiffs and Respondents.

OPINION

KAUFMAN, J.—Defendant Commonwealth Land Title Insurance Company (Commonwealth) appeals from a summary judgment in the amount of $10,000 plus interest and costs granted in favor of plaintiffs Vide and Darlene Glavinich on their action for damages on a title insurance policy and for negligence.

## Facts

Plaintiffs opened an escrow for the purpose of making a $10,000 third trust deed loan to the owner of certain residential property in Orange County.[1] Through the escrow, plaintiffs requested from Commonwealth a standard coverage policy of title insurance.

Commonwealth issued a preliminary report dated October 21, 1981, which noted the existence of a first deed of trust to secure an indebtedness of $51,500, and a second deed of trust to secure an indebtedness of $63,500. Seven days after the preliminary report was issued, on October 28, 1981, a declaration of default and demand for sale on the second deed of trust was recorded.

On November 6, 1981, the loan escrow closed, the third deed of trust was recorded, and Commonwealth issued its standard coverage title policy insuring plaintiffs' deed of trust as a third deed of trust, junior to both the first and second deeds of trust. The recorded declaration of default and demand for sale on the second trust deed was not listed in the policy as a specific item not covered nor was it otherwise mentioned.

On February 1, 1982, a notice of trustee's sale under the second deed of trust was recorded. Plaintiffs discovered the existence of the declaration of default and demand for sale on February 3, 1982, and the next day made a claim against Commonwealth under the title insurance policy. Commonwealth rejected plaintiffs' claim by a letter dated February 16, 1982, on the ground that the recorded declaration of default and demand for sale was not a defect in or a lien or encumbrance on plaintiffs' title, and thus was not included within the insuring provisions of the policy.

Averredly, plaintiffs were financially unable to cure the default on the second trust deed, and on July 27, 1982, the second trust deed was fore-

---

[1]Throughout the declaration in support of the motion for summary judgment and plaintiffs' brief on appeal the transaction is referred to as the "purchase" of a third trust deed. Although it makes no difference in the disposition of the appeal, the fact that the deed of trust names plaintiffs as the beneficiaries indicates the transaction was a loan secured by a third deed of trust as Commonwealth asserts.

closed by trustee's sale and a trustee's deed conveying the subject property to the beneficiaries of the second trust deed was executed and recorded. Plaintiffs thus lost their entire interest in the property under the third deed of trust.

On October 28, 1982, plaintiffs filed this action in six counts against various defendants.[2] Commonwealth was named as a defendant only in the fourth and fifth counts which purported to state causes of action on the policy of title insurance and for negligence, respectively.

Plaintiffs moved for summary judgment against Commonwealth supporting their motion with a declaration by Vide Glavinich and Commonwealth's answers to interrogatories. The declaration of Vide Glavinich avers that he was considering "the purchase of a $10,000.00 note from Charles T. Blackburn, which was to be secured by a Third Deed of Trust" on the subject property [see fn. 1, *ante*]; that "[i]n order to ensure that such an investment would be a sound and proper one," he purchased the subject policy of title insurance; that on October 28, 1981, the declaration of default and demand for sale had been recorded with respect to the second deed of trust; that the policy of title insurance issued by Commonwealth more than a week after recordation of the declaration of default and demand for sale failed to make any reference whatever to the fact that such a document had been recorded; that he was completely unaware of the condition of the second deed of trust and decided to "purchase the note"; that he would never have purchased the third deed of trust had he known the property was in foreclosure; that he did not have the financial ability to pay off the second trust deed to prevent his third deed of trust from being wiped out; that on February 3, 1982, he and his wife discovered the existence of the recorded declaration of default and demand for sale, notified Commonwealth and made a claim for payment under the policy of title insurance but his claim was rejected by a letter from Commonwealth received February 16, 1982; that when he purchased "the policy of title insurance from the Defendant Insurance Company, [he] fully informed them of [his] intentions in purchasing a note to be secured by a Third Deed of Trust on the aforementioned property"; that Commonwealth had since acknowledged it was its practice, and apparently the practice in the title insurance industry, to list a notice of default and demand for sale on a preliminary report and if it had not been eliminated

---

[2]Allegedly, the owner of the real property and the owner's broker represented to plaintiffs that the real property had a market value of $159,000, that it was subject to first and second trust deeds in the aggregate total of $115,000, and that the payments on the first and second trust deeds were current. In fact, the owner was in arrears on the second trust deed as to which the declaration of default and demand for sale was recorded on October 28, 1981. Several of the six counts in the complaint are against the owner and the broker based on these allegedly false representations.

by the time of issuance of the policy of title insurance, to list it also on the policy; and that Commonwealth had indicated to plaintiffs that it had been unable to determine whether the recorded declaration of default and demand for sale was simply not discovered by its personnel or whether it had been discovered but for some reason was not listed in the title policy.[3]

Commonwealth's answers to interrogatories confirmed that it was its practice as well as the practice in the industry to mention a recorded notice of default and demand for sale in its preliminary report and, if not eliminated by the time the policy of title insurance was issued, also to list the recorded document as an exception to its policy of title insurance. Commonwealth's answers also confirmed that it had been unable to ascertain the reason the recorded notice of default and demand for sale was not mentioned in its policy of title insurance.

In opposing plaintiffs' motion for summary judgment in the trial court, Commonwealth urged that the recorded notice of default and demand for sale with respect to the second deed of trust was not a defect in or lien or encumbrance on plaintiffs' title and was therefore not covered by its title insurance policy. With respect to the count for negligence, Commonwealth urged that as a matter of law it had no duty to disclose the existence of the recorded declaration of default and demand for sale; that, alternatively, the existence of any such duty depended upon exactly what it had been told with respect to plaintiffs' purposes and requirements and that was entirely unclear from Mr. Glavinich's declaration; and that in any event there was a triable issue of fact as to plaintiffs' reliance on the omission from the title insurance policy of any reference to the recorded notice of default and demand for sale.

Apparently rejecting all of defendant's arguments, the trial court awarded plaintiffs summary judgment in the amount of $10,000 plus interest and costs. Although requested to specify whether judgment was granted on the fourth or fifth counts or both, the trial court did not do so.

### Contentions, Issues and Discussion

On appeal the positions taken by the parties are virtually the same as those taken in the trial court. Plaintiffs assert coverage under the policy and neg-

---

[3]Except in the averment concerning the practice of Commonwealth and the apparent practice in the title insurance industry to list a recorded notice of default and demand for sale in the preliminary report and the policy of title insurance, there is no mention in Mr. Glavinich's declaration of any preliminary report, and the declaration contains no averments whatever with respect to the preliminary report issued by Commonwealth on October 21, 1981. That report could not, however, have included any reference to the declaration of default and demand for sale because that document was not recorded until October 28, 1981, a week after issuance of the preliminary report.

ligently caused damages as a matter of law, whereas Commonwealth contends there is no coverage under the policy and that either there was no negligence as a matter of law or that triable issues of fact exist in respect to the negligence count. We conclude that for the most part Commonwealth is correct.

## I. *Coverage Under the Policy*

■ The insuring clause of the policy of title insurance provides in relevant part that Commonwealth insures against loss or damage not exceeding the amount stated in the policy together with costs, attorney fees and expenses, by reason of (1) title to the insured estate or interest being vested other than as stated in the policy, or (2) "[a]ny defect in or lien or encumbrance on such title" or (3) unmarketability of such title.

There is no claim that title to either the real property or the third deed of trust, which was what was insured by the policy, was vested in anyone other than the borrower or plaintiffs, respectively. Similarly, plaintiffs did not urge in the trial court nor have they asserted here that their title to the third deed of trust was unmarketable as a result of the recorded declaration of default and demand for sale on the second deed of trust. Neither did Mr. Glavinich's declaration contain any averments to support such a claim. Nor do we believe such a claim could successfully be made. A third trust deed loan is frequently made for the very purpose of giving the owner the ability to cure a default in payment on a senior encumbrance. More importantly, while the recordation of the declaration of default and demand for sale on the second deed of trust might well have affected the value of the third deed of trust, it could not render title to the third deed of trust unmarketable.

The only other coverage under the policy was for "[a]ny defect in or lien or encumbrance on such title." Commonwealth is correct that the recorded declaration of default and demand for sale did not constitute a defect in or lien or encumbrance upon plaintiffs' title. Manifestly, a notice of default and demand for sale with respect to a senior deed of trust cannot affect title to a junior deed of trust. It might or might not affect the value of the junior deed of trust or its desirability, but it does not constitute a defect in the title of the holder of the junior deed of trust or a lien or encumbrance upon either the junior deed of trust or the title of the holder of the junior deed of trust. It must be concluded therefore there was no coverage under the policy.

■ Plaintiffs argue that ambiguities must be resolved in favor of the insured in accordance with the insured's reasonable expectations and claim

the policy is ambiguous because it failed specifically to exclude the declaration of default and demand for sale.

We agree that ambiguities are to be construed adversely to the insurer, but we do not agree the policy is ambiguous because it does not specifically exclude recorded declarations of default and demands for sale.

There are literally hundreds of problems that may affect real property, its condition or value and it would be a limitless task for the insurer to specifically enumerate each of them as being excluded from coverage. Coverage is defined in the first instance by the insuring clause, and when an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded.

■ We additionally observe it is highly doubtful that by an objective standard an insured could reasonably expect a policy of title insurance or the preliminary report to give him information concerning the status and condition of senior liens aside from their existence. This is especially so in the absence of evidence the insured had knowledge of the insurer's practice of including some such information in the report or policy. Whether or not payments are current on a senior deed of trust is not usually a matter of record and is customarily ascertained by demanding a beneficiary statement from the senior lienholder. (See Civ. Code, § 2943.)

In any event, the recorded declaration of default and demand for sale was clearly not within the insuring clause of the policy and was not covered.

## II. *Negligence*

■ The showing made by plaintiffs in support of their motion for summary judgment was entirely inadequate to support a summary judgment based on negligence. At the very least there exists a triable issue of fact as to whether or not plaintiffs relied on the title insurance policy and the failure of the policy to mention the notice of default and demand for sale. The loan escrow closed and the deed of trust was recorded November 6, 1981. The policy of title insurance was issued the same date but was not sent to the escrow until November 9, and in the normal course plaintiffs would not have seen the policy of title insurance until at least several days later. Mr. Glavinich's declaration in support of the motion for summary judgment states that he would not have "purchased" the deed of trust if he had known the second deed of trust was being foreclosed, but notably he did not aver that he had seen the title policy before "purchasing" the deed of trust or that he relied on the title policy's failure to mention the recorded declaration of default and demand for sale. As previously noted (see fn. 3, *ante*), there

is no averment whatever in the declaration concerning the preliminary report or plaintiffs' reliance on it, and, of course, the preliminary report was issued a week before the declaration of default and demand for sale was recorded. Thus, at the very least, the issue of causation constitutes a triable issue.

■ We do not agree with Commonwealth that the record before us establishes as a matter of law it had no duty to disclose the existence of the recorded declaration of default and demand for sale. Whether it had such a duty or not will depend inter alia on what information was furnished it concerning plaintiffs' intentions and requirements in respect to the transaction, the nature and purpose of its preliminary report, and, perhaps, whether or not its personnel actually discovered the recorded declaration of default and demand for sale. None of those factual matters are sufficiently established by the present record to permit us to rule as a matter of law whether or not a duty to disclose existed. Under appropriate circumstances a title insurer may be held to the standard of care of an abstractor of title and must list all matters of public record regarding the property in its preliminary report. (See, e.g., *Hardy* v. *Admiral Oil Co.* (1961) 56 Cal.2d 836, 841 [16 Cal.Rptr. 894, 366 P.2d 310]; *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917, 938-939 [122 Cal.Rptr. 470] [disapproved on other grounds in *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754 (136 Cal.Rptr. 815)]; *Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 545-546 [115 Cal.Rptr. 257].)

■ We can perhaps head off one problem that might arise in the proceedings following remand by resolving the question of whether sections 12340.10[4] and 12340.11[5] of the Insurance Code enacted in 1981 (Stats. 1981, ch. 55, §§ 1 and 2, p. 106) are applicable in this case, foreclosing the possibility that Commonwealth may be held to the standard of an abstractor of title. The answer is no.

---

[4]Section 12340.10 reads: " 'Abstract of title' is a written representation, provided pursuant to a contract, whether written or oral, intended to be relied upon by the person who has contracted for the receipt of such representation, listing all recorded conveyances, instruments or documents which, under the laws of this state, impart constructive notice with respect to the chain of title to the real property described therein. An abstract of title is not a title policy as defined in Section 12340.2."

[5]Section 12340.11 reads: " 'Preliminary report,' 'commitment,' or 'binder' are reports furnished in connection with an application for title insurance and are offers to issue a title policy subject to the stated exceptions set forth in the reports and such other matters as may be incorporated by reference therein. The reports are not abstracts of title, nor are any of the rights, duties or responsibilities applicable to the preparation and issuance of an abstract of title applicable to the issuance of any report. Any such report shall not be construed as, nor constitute, a representation as to the condition of title to real property, but shall constitute a statement of the terms and conditions upon which the issuer is willing to issue its title policy, if such offer is accepted."

As enactments of the Legislature during the 1981 regular session, sections 12340.10 and 12340.11 became effective January 1, 1982, unless given retroactive effect, whereas Commonwealth's title insurance policy was issued November 6, 1981. And under controlling principles of law the newly enacted code provisions may not be applied retroactively.

■ "It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent." (*Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159].) The courts will, rather, presume that prospective rather than retrospective operation was intended, unless express language or clear and unavoidable implication negatives the presumption. (See *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 148-149 [23 Cal.Rptr. 592, 373 P.2d 640].) ■ Sections 12340.2 and 12340.11 of the Insurance Code were not made expressly retroactive; they were not enacted as part of any urgency legislation; no particular legislative intent as to retroactivity appears; and we perceive nothing that indicates a legislative intent these definitional sections were to apply retroactively. Accordingly, we conclude they have no application to the instant case.

### Conclusion and Disposition

As to the count on the title insurance policy we have concluded that the problem complained of by plaintiffs is not covered by the policy. As to the count for negligence we have concluded one or more triable issues of fact exist. Accordingly, the motion for summary judgment was erroneously granted and must be reversed. It is so ordered.

Morris, P. J., and Rickles, J., concurred.