# Illinois Official Reports

## Appellate Court

---

### *Huizenga v. Auto-Owners Insurance*, 2014 IL App (3d) 120937

---

| | |
|---|---|
| Appellate Court Caption | DAVID HUIZENGA and BRENDA HUIZENGA, Plaintiffs-Appellants, v. AUTO-OWNERS INSURANCE, a Corporation, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-12-0937 |
| Filed | January 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a declaratory judgment action seeking excess uninsured motorist coverage under an endorsement in plaintiffs' umbrella policy for the injuries they suffered in an accident with an uninsured motorist, the trial court properly granted summary judgment for plaintiffs' insurer, notwithstanding plaintiffs' contention that the endorsement was ambiguous, since the umbrella policy expressly provided coverage for "Personal Liability" and unambiguously excluded excess coverage for the insureds' first-party injuries, and the exclusion of excess uninsured motorist coverage pursuant to an umbrella policy is consistent with Illinois law. |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 11-L-26; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Warner, of Warner & Zimmerle, of Rock Island, for appellants.

J. Scott Gillman and Guy M. Conti, both of Condon & Cook, LLC, of Chicago, for appellee.

Panel

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices McDade and Carter concurred in the judgment and opinion.

**OPINION**

¶ 1    The plaintiffs, David and Brenda Huizenga, appeal from the trial court's ruling in favor of the defendant, Auto-Owners Insurance (Auto-Owners), and against the plaintiffs (the insureds) on their respective motions for summary judgment. On appeal, the insureds contend that the trial court erred in finding that an endorsement in their umbrella policy with Auto-Owners did not provide excess uninsured motorist coverage for their personal injuries. We affirm the order of the trial court.

¶ 2                                    FACTS

¶ 3    On April 6, 2010, the insureds incurred injuries in a motor vehicle accident with an uninsured driver. Their injuries exceeded $500,000 in damages.

¶ 4    At the time of the accident, the insureds owned an underlying automobile insurance policy with coverage for: (1) bodily injury ($500,000 per person and per occurrence); (2) property damage ($100,000 per occurrence); (3) uninsured and underinsured motorist ($500,000 per person and per occurrence); and (4) medical payments ($5,000 per person).

¶ 5    In addition, at the time of the accident the insureds owned an "Executive Umbrella Insurance Policy" that provided $1 million in excess coverage for the insureds for "Personal Liability." Personal liability under the policy was described as "the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of personal injury or property damage."

¶ 6    The umbrella policy also included an endorsement with the following language:
"EXCLUSION OF PERSONAL INJURY TO INSUREDS
FOLLOWING FORM
We do not cover personal injury to you or a relative. We will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A."

- 2 -

Schedule A listed "Underlying Insurance Requirements" and the "Minimum Primary Limits" required as follows:

"A) COMPREHENSIVE PERSONAL LIABILITY

|  |  |
|---|---|
| Single Limit | $300,000 ea occ |

B) AUTOMOBILE LIABILITY

|  |  |
|---|---|
| Bodily Injury Liability | $500,000 ea person |
|  | $500,000 ea occ |
| and Property Damage | $100,000 ea occ" |

¶ 7 The insureds brought a declaratory judgment action against Auto-Owners for excess coverage under the umbrella policy for their personal injuries (first-party claims) that were incurred in the April 6, 2010, motor vehicle accident with the uninsured driver. Auto-Owners filed a counterclaim for a declaratory judgment that the umbrella policy did not provide excess uninsured motorist coverage for the insureds' personal injuries. Each party filed a motion for summary judgment.

¶ 8 In ruling on the parties' motions for summary judgment, the trial court defined the issue as whether the language within the endorsement entitled "Exclusion of Personal Injury to Insureds Following Form" afforded the insureds excess uninsured motorist coverage. The trial court noted, "no Illinois court of review has rendered an opinion interpreting this language and its effect." Citing *Wadzinski v. Auto-Owners Insurance Co.*, 2012 WI 75, 342 Wis. 2d 311, 818 N.W.2d 819, the trial court indicated that the Supreme Court of Wisconsin interpreted identical language in an umbrella policy's endorsement as not affording first-party uninsured motorist coverage. The trial court found the analysis of the Supreme Court of Wisconsin in *Wadzinski* to be consistent with Illinois law. The trial court granted Auto-Owners' motion for summary judgment and denied the insureds' motion for partial summary judgment. The insureds appealed.

¶ 9                                                    ANALYSIS

¶ 10 On appeal, the insureds argue that summary judgment should have been granted in their favor. Specifically, they argue that the endorsement entitled "Exclusion of Personal Injury to Insureds" was ambiguous and should have been read in their favor.

¶ 11 Summary judgment should be granted only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is clearly entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Summary judgment rulings are subject to a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992).

¶ 12 When a court interprets an insurance policy, there are only two sources upon which it may base its analysis: (1) the plain language of the policy; and (2) the plain language of the Illinois Insurance Code as it existed at the time the policy was written. *Harrington v. American Family Mutual Insurance Co.*, 332 Ill. App. 3d 385 (2002). Only where an ambiguity exists should the

court look to other materials. *Id.* An ambiguity exists in an insurance contract if it is subject to more than one reasonable interpretation. *Abram v. United Services Automobile Ass'n*, 395 Ill. App. 3d 700 (2009). We will not strain to find an ambiguity where none exists. *Id.* Unambiguous language will be applied as written unless it violates public policy. *Id.* Policy terms that limit an insurer's liability will be liberally construed in favor of coverage but only where the policy language is ambiguous. *Id.*

¶ 13    An insurance policy is a contract, to which the general rules of contract construction apply. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11 (2005). The primary objective is to ascertain and give effect to the intention of the parties, as expressed in the language of the policy. *Id.* The court reads the insurance contract as a whole, giving effect to every provision and taking into account the type of insurance, the nature of the risks undertaken, and the overall purpose of the policy. *Continental Casualty Co. v. Donald T. Bertucci, Ltd.*, 399 Ill. App. 3d 775 (2010). Terms are given their plain, ordinary, and generally accepted meaning, unless otherwise defined in the contract. *Id.*

¶ 14                                  I. Plain Language of the Policy

¶ 15    In this case, the express terms of the umbrella policy indicated that coverage was for "Personal Liability." "Liability" means liability for injuries or other losses to persons other than the insured. *Abram*, 395 Ill. App. 3d 700. Therefore, the umbrella policy provided excess coverage for the insureds' liability to third parties. The insureds do not contend the grant of coverage for third-party liability also created coverage for their first-party personal injuries. Instead, the insureds argue that the following form endorsement entitled "EXCLUSION OF PERSONAL INJURY TO INSUREDS" was ambiguous and should have been read in their favor as providing excess uninsured motorist coverage.

¶ 16    In examining the terms of the endorsement, there is no question that the first sentence of the endorsement specifically excludes coverage for the insureds' personal injuries, as the sentence provides, "We do not cover personal injury to you or a relative." It is in the second sentence that the insureds argue an ambiguity exists. The second sentence indicates, "we will cover such injury to the extent that insurance is provided by an underlying policy listed in Schedule A." Schedule A referred to the "bodily injury liability" and "property damage" portions of the insureds' underlying automobile liability policy. Schedule A makes no reference to uninsured motorist coverage. Therefore, the plain language of the endorsement unambiguously excluded excess coverage for the insureds' first-party personal injuries.

¶ 17    Additionally, we note that Schedule A listed the "Underlying Insurance Requirements" and established "Minimum Primary Limits" for the insureds to carry before excess coverage would be provided by the $1 million umbrella policy. Schedule A indicates that the insureds were required to carry $500,000 of underlying bodily injury liability coverage in their automobile liability policy but makes no reference to and requires no minimum limit for the underlying uninsured motorist coverage. By operation of law, the insureds would have been required to have uninsured motorist coverage of at least $20,000 per person and $40,000 per occurrence. See 215 ILCS 5/143a-2(1) (West 2010) (allowing an insured to reject limits of uninsured motorist coverage that exceed the required statutory minimum of $20,000 per

person and $40,000 per occurrence). It is unlikely the parties intended to limit excess coverage for the insureds' bodily injury liability to claims over $500,000 while potentially providing excess uninsured motorist coverage for any claims over $20,000 per person or $40,000 per occurrence if the insureds elected to have the amount of minimum uninsured motorist coverage. We find the fact that no "Underlying Insurance Requirements" were established in Schedule A for uninsured motorist coverage indicates that excess uninsured motorist coverage was not contemplated by the umbrella policy.

¶ 18        The insureds argue that because the provision at issue was an endorsement, its language may modify the grant of coverage to include excess uninsured motorist claims. However, it is clear the endorsement was not intended to modify the grant of coverage but intended to modify the exclusion section of the policy to add the exclusion for the insureds' first-party personal injuries. As an exclusion, the language in the endorsement could not create insurance coverage. See *Landmark American Insurance Co. v. NIP Group, Inc.*, 2011 IL App (1st) 101155 (neither a policy exclusion nor an exception to a policy exclusion can create insurance coverage where coverage did not otherwise exist). Therefore, we find that the umbrella policy unambiguously excludes excess coverage for the insureds' first-party injuries.

¶ 19                                    II. Illinois Insurance Code

¶ 20        Interpreting the terms of the umbrella policy as excluding first-party coverage is consistent with Illinois law. With some exceptions, all motor vehicles operated or registered in this state must be covered by a liability insurance policy with bodily injury limits of at least the minimum amount specified by the Illinois Safety and Family Financial Responsibility Law (Financial Responsibility Law) (currently $20,000 per person and $40,000 per occurrence). 625 ILCS 5/7-601(a), 7-203 (West 2010). Section 143a of the Illinois Insurance Code requires every motor vehicle liability policy to include uninsured motorist coverage with at least the same minimum specified by the Financial Responsibility Law (currently $20,000 per person and $40,000 per occurrence). 215 ILCS 5/143a (West 2010); 625 ILCS 5/7-203 (West 2010). The purpose of requiring uninsured motorist coverage in an amount not less than the limits of the Financial Responsibility Law is to place the policyholder in substantially the same position he would occupy, so far as his being injured or killed, as if the wrongful driver had the required minimum amount of liability insurance. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48 (2011).

¶ 21        Uninsured motorist insurance provides coverage where, regardless of the insured's liability, the insured is protected from financial losses for his or her own injuries caused by an uninsured motorist. *Harrington*, 332 Ill. App. 3d 385. Therefore, uninsured motorist coverage inures to the financial benefit of the insured. *Id.* On the other hand, liability insurance protects the policyholder from financial losses due to claims brought by third parties that are legally recoverable against the insured. *Cincinnati Insurance Co. v. Miller*, 190 Ill. App. 3d 240 (1989). An umbrella policy provides coverage in excess of the amount provided by the underlying liability policy in order to protect the insured from an excess judgment from a third party. *Id.* at 247 (citing *Hartbarger v. Country Mutual Insurance Co.*, 107 Ill. App. 3d 391 (1982)). Consequently, the monetary benefit of an umbrella policy falls upon the injured

individual, not the insured. *Harrington*, 332 Ill. App. 3d at 390 (citing *Hartbarger*, 107 Ill. App. 3d 391).

¶ 22 Insurers are permitted to issue umbrella policies that exclude uninsured motorist coverage. 215 ILCS 5/143a-2(5) (West 2010). Limiting an umbrella policy's coverage to excess third-party liability and excluding excess uninsured motorist coverage is consistent with Illinois law and public policy. *Abram*, 395 Ill. App. 3d 700. Therefore, interpreting the umbrella policy to exclude excess uninsured motorist claim is consistent with Illinois law.

¶ 23                                       III. Case Law

¶ 24 In support of their argument that the endorsement at issue provides excess uninsured motorist coverage, the insureds cite to the Virginia circuit court case of *Auto-Owners Insurance Co. v. Morris*, 81 Va. Cir. 337 (2010). In *Morris*, the circuit court determined that an endorsement in an umbrella policy identical to the one at issue in this case provided coverage for first-party claims. The court reasoned that the language was included in a "following form" endorsement which may provide excess coverage identical to the coverage in underlying policy. As a result, the *Morris* court found that because the underlying policy provided uninsured motorist coverage, the umbrella policy did as well.

¶ 25 In *Wadzinski*, the Supreme Court of Wisconsin ruled the opposite way. There, the court determined that uninsured motorist benefits were excluded from an umbrella policy with an endorsement identical to the one at issue in this case. *Wadzinski*, 2012 WI 75, 342 Wis. 2d 311, 818 N.W.2d 819. The *Wadzinski* court concluded that the endorsement excluded first-party coverage. The *Wadzinski* court also determined that the second sentence of the endorsement was intended to clarify that the exclusion for the insureds' personal injuries in the umbrella policy was not intended to interfere with first-party coverage in underlying policies.

¶ 26 Here, the Auto-Owners' umbrella policy in this case provided excess third-party liability coverage and unambiguously excluded excess coverage for the insureds' personal injuries. The policy's grant of coverage was for excess third-party liability claims. The following form endorsement at issue unambiguously excluded excess coverage for the insureds' personal injuries. The second sentence of the endorsement did not create excess coverage for the insureds' uninsured motorist claims and was not ambiguous as to whether it did so. The second sentence indicated that Auto-Owners would provide coverage for the insureds' personal injuries "to the extent that insurance is provided by an underlying policy listed in Schedule A." Schedule A did not refer to the uninsured motorist coverage in the underlying policy and, instead, referred only to "bodily injury liability" and "property damage." Thus, even if the endorsement was intended to create excess coverage to "follow form" of the insurance coverage listed in Schedule A, as suggested in *Morris*, excess uninsured motorist coverage would not have been included.

¶ 27 Accordingly, we affirm the trial court's summary judgment rulings.

## CONCLUSION

The judgment of the circuit court of Whiteside County granting Auto-Owners' motion for summary judgment and denying the insureds' partial motion for summary judgment is affirmed.

Affirmed.