Filed 2/3/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LARRY HAERING, | B260235 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. KC066356) |
| v. | |
| TOPA INSURANCE COMPANY | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert A. Dukes, Judge.  Affirmed.

Shernoff Bidart Echeverria Bentley, Michael J. Bidart, Ricardo Echeverria, and Matthew W. Clark for Plaintiff and Appellant.

Selman Breitman, Alan B. Yuter and Rachel E. Hobbs for Defendant and Respondent.

The issue presented in this appeal is whether an excess liability insurance policy that "follows form" to an underlying primary policy that provides uninsured motorist/underinsured motorist (UM/UIM) coverage must also provide such coverage after the underlying policy limit has been exhausted. We hold that the excess policy does not provide coverage for first party UM/UIM claims because the policy's insuring agreement unambiguously limits the insurer's indemnity obligation to third party liability claims. We therefore affirm the judgment entered in the excess insurer's favor.

## BACKGROUND

Plaintiff and appellant Larry Haering (plaintiff) is the owner of California Fleet, Inc. California Fleet was an insured under a primary insurance policy issued by State National Insurance Company, with a policy period of December 9, 2011 to December 9, 2012 (the State National policy). California Fleet was also an insured under an excess liability policy issued by Topa Insurance Company (Topa), with a policy period from December 9, 2011 to December 9, 2012 (the Topa policy). The Topa policy designates the State National policy as the underlying primary policy.

**State National policy**

The State National policy's declarations page lists the types of coverage afforded under the policy and the applicable policy limits, including a $1 million each "Accident" "Garage Operations" limit, a $2 million "Garage Operations" aggregate limit, and a $1 million limit for UM/UIM coverage. The State National policy is modified by an endorsement that provides UM coverage as follows:

> "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle."

**Topa policy**

The Topa policy's insuring agreement provides in relevant part as follows:

"**1. Excess Liability Indemnity**

"To indemnify the insured for the amount of loss which is in excess of the applicable limits of liability, whether collectible or not, of the Underlying Insurance inserted in Item 6[1] of the Declarations, provided that this policy shall apply only to those coverages for which a limit of liability is inserted in Item 5[2] of the Declarations. If such scheduled Underlying Insurance contains a sub-limit in a lesser amount than the scheduled limit, the Insurance afforded by this policy shall apply in the same manner it would have applied had the scheduled limit been maintained and not reduced by the sub-limit. Provided further that the limit of the Company's liability under this policy shall not exceed the applicable amount inserted in Item 5 of the Declarations.

"The provisions of the immediate underlying policy are incorporated as a part of this policy except for:

"(a) any obligation to investigate, defend, or pay for costs incident to the same;

"(b) the amount of the limits of liability;

"(c) any 'other insurance' provision, and

"(d) any other provisions therein which are inconsistent with the provisions of this policy.

"If the applicable coverage in the immediate underlying policy insures accidents rather than occurrences, then 'accident' is substituted for 'occurrence' in the applicable coverage of this policy."

The term "loss" is defined in the Topa policy as "the sum paid in settlement of losses for which the Insured is liable after making deduction for all recoveries, salvages or other insurance (other than recoveries under the policy of the Underlying Insurance) whether recoverable or not, and shall include all expenses and 'costs.'" The term

---

[1] Item 6 of the declarations page identifies the State National policy as the underlying insurance.

[2] Item 5 of the declarations page specifies the limits of liability as $1 million for each occurrence and $1 million in the aggregate.

3

"immediate underlying policy" is defined as the Underlying Insurance listed in Item 6 of the declarations.

The Topa policy excludes coverage for "any liability or obligation imposed on the Insured under . . . any uninsured motorists, underinsured motorists or automobile no-fault or first party personal injury law."

**Plaintiff's accident and tender to Topa**

On October 14, 2012, plaintiff was injured in a motor vehicle accident caused by a negligent driver who was an insured under a policy with a $25,000 liability limit. In February 2013, plaintiff settled his claim against the negligent driver by accepting the $25,000 limit under the driver's policy. In May 2013, plaintiff submitted a claim to State National and eventually recovered the policy limit under the $1 million uninsured motorist endorsement to the State National policy.[3]

On July 23, 2013, plaintiff submitted a claim to Topa for $1 million in excess coverage. Plaintiff maintained that the Topa policy followed form to the State National policy and incorporated the $1 million UM/UIM endorsement.

Topa denied coverage for plaintiff's claim on two principal grounds: (1) the policy's insuring agreement limits coverage to third party liability claims, and (2) a policy exclusion barred coverage for liability imposed under any UM/UIM law.

**The instant lawsuit**

Plaintiff commenced the instant action on September 26, 2013, asserting causes of action against Topa for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief. After Topa answered, plaintiff filed a motion for summary adjudication of a single issue -- whether the Topa policy obligated Topa to

---

[3]    Plaintiff recovered $975,000 under the State National policy, pursuant to the anti-stacking provisions of the State National uninsured motorist endorsement, and Insurance Code section 11580.2, subdivision (d), which permits a uninsured motorist insurance policy to require proration of the claim if the insured has insurance available under more than one uninsured motorist policy. (Ins. Code, §11580.2, subd. (d); *Allstate Ins. Co. v. Mercury Ins. Co.* (2007) 154 Cal.App.4th 1253.)

4

provide UM/UIM coverage for injuries plaintiff sustained in the October 14, 2012 accident.

Following a July 14, 2014 hearing on plaintiff's summary adjudication motion, the trial court denied the motion, ruling that the Topa policy covered only third party liability claims, and not a first party UM/UIM claim for benefits for injuries sustained by the insured. Plaintiff and Topa entered into a stipulation for entry of judgment, preserving plaintiff's right to file the instant appeal. Judgment was entered in Topa's favor, and this appeal followed.

## DISCUSSION

### I. Standard of review

The standard of review for an order granting or denying a motion for summary adjudication is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) The trial court's stated reasons for granting summary adjudication are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

### II. Applicable legal principles

#### A. Policy interpretation

"'Interpretation of an insurance policy is a question of law and follows the general rules of contract interpretation. [Citation.] "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties. 'Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. [Citation.] Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation. [Citation.]'. . . ." [Citation.]' [Citation.]" (*TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27.) Policy provisions must be interpreted in context, giving effect to every part of the policy with "'"each clause

5

helping to interpret the other.'" (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.)

If the language of the policy is clear and explicit, it governs. (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 868 (*Foster-Gardner*).) "'"A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable." [Citations.] The fact that a term is not defined in the policies does not make it ambiguous. [Citations.] Nor does "[d]isagreement concerning the meaning of a phrase," or "'the fact that a word or phrase isolated from its context is susceptible of more than one meaning.'" [Citation.] "'[L]anguage in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'" [Citation.] . . . .' [Citation.]" (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390-391.)

The insured bears the burden of bringing a claim within the basic scope of coverage of a policy's insuring agreement, and a court will not indulge a forced interpretation of the insuring agreement to bring a claim within the scope of its coverage. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 (*Waller*).)

**B. *First party insurance distinguished from third party liability insurance***

The distinction between first party insurance and third party liability insurance is pertinent to our analysis. "[A] first party insurance policy provides coverage for loss or damage sustained directly by the insured . . . . A third party liability policy, in contrast, provides coverage for liability of the insured to a 'third party' . . . . In the usual first party policy, the insurer promises to pay money to the insured upon the happening of an event, the risk of which has been insured against. In the typical third party liability policy, the carrier assumes a contractual duty to pay judgments the insured becomes legally obligated to pay as damages because of bodily injury or property damage caused by the insured. [Citation.]" (*Montrose Chemical Corp. v. Admiral Ins. Co.* (1995) 10 Cal.4th 645, 663 (*Montrose*).) When analyzing coverage under a third party liability policy, the

6

focus is "on the insured's legal obligation to pay for injury or damage. . . ." (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 407-408 (*Garvey*).)

UM and UIM coverages "'are *not* "third party" coverages. They are strictly "first party" coverages because the insurer's duty is to *compensate its own insured for his or her losses*, rather than to indemnify against liability claims from others. [Citation.]' [Citation.]" (*Weston Reid, LLD v. American Ins. Group, Inc.* (2009) 174 Cal.App.4th 940, 950, quoting Croskey, et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2008) ¶ 6:2095, p. 6G-11.)

### C.  UM/UIM coverage

Insurance Code section 11580.2 requires insurance policies that cover the ownership, maintenance, or use of any motor vehicle to provide coverage for damages caused by an uninsured or underinsured vehicle. (Ins. Code, § 11580.2.) "Section 11580.2 mandates two separate types of coverage -- UM and UIM coverage. UM coverage requires the insurer to pay its insured, up to specified limits, damages for bodily injury or wrongful death the insured would be entitled to recover from the owner or operator of an uninsured motor vehicle. [Citation.] UIM coverage allows an insured to recover from his or her own insurer the difference between the amount of the insured's own underinsured motorist policy limits and whatever is available from the negligent driver's liability insurance. [Citations.]" (*Daun v. USAA Cas. Ins. Co.* (2005) 125 Cal.App.4th 599, 606.)

The statutory requirement for UM/UIM coverage does not apply, however, to excess insurance policies. (Ins. Code, § 11580.2, subd. (a)(1); *Furlough v. Transamerica Ins. Co.* (1988) 203 Cal.App.3d 40, 47 ["neither statutory nor decisional law requires that insurance furnished on an umbrella or excess basis include uninsured motorist coverage"].)

### D.  Primary insurance and excess insurance

The distinction between primary insurance coverage and excess insurance coverage is also pertinent to our analysis. Primary insurance provides immediate coverage upon the happening of an occurrence that gives rise to liability. (*Century Surety*

*Co. v. United Pacific Ins. Co.* (2003) 109 Cal.App.4th 1246, 1255.)  Excess insurance provides coverage after a predetermined amount of primary coverage has been exhausted. (*Ibid.*)

A "following form" excess policy incorporates by reference the terms and conditions of the underlying primary policy.  (*Coca Cola Bottling Co. v. Columbia Casualty Ins. Co.* (1992) 11 Cal.App.4th 1176, 1182 (*Coca Cola*).)  A following form excess policy generally will contain the same basic provisions as the underlying policy, with the exception of those provisions that are inconsistent with the excess policy. (Seaman & Kittridge, *Excess Liability Insurance:  Law and Litigation* (1997) 32 Tort & Ins. L.J. 653, 658.)  Any inconsistency or conflict between the provisions of a following form excess policy and the provisions of an underlying primary policy is resolved by applying the provisions of the excess policy.  "It is well settled that the obligations of following form excess insurers are defined by the language of the underlying policies, except to the extent that there is a conflict between the two policies, in which case, absent excess policy language to the contrary, the wording of the excess policy will control. [Citations.]"  (Ostrager & Newman, Handbook of Insurance Coverage Disputes (17th ed. 2014) § 13.01; see also *Home Ins. Co. v. American Home Products Corp.* (2d Cir. 1990) 902 F.2d 1111, 1113 [although both primary and excess policies must be examined in determining the scope of excess insurer's obligations, excess policy controls if there is any conflict between the two insuring agreements].)

Some excess insurance policies include, by endorsement, a "broad as primary" provision.  A "broad as primary" endorsement enlarges the scope of coverage to include a loss that is within the scope of the underlying primary policy, even though that loss otherwise would have been excluded under the terms of the excess policy.  (Ostrager & Newman, Handbook of Insurance Coverage Disputes, *supra*, § 13.01[b]; see *Housing Group v. California Ins. Guarantee Assn.* (1996) 47 Cal.App.4th 528, 533-535 [broad as primary endorsement applies to any loss within the scope of primary policy's coverage].)

8

**III. The Topa policy's insuring agreement does not cover UM/UIM claims and the following form provision does not expand coverage to include such claims**

The plain language of the Topa policy's insuring agreement limits the insurer's indemnity obligation to "losses for which the insured is liable," i.e., third party liability claims.[4] (*Montrose, supra*, 10 Cal.4th at p. 663; *Garvey, supra*, 48 Cal.3d at pp. 407-408.) Plaintiff's claim for first party UM/UIM benefits does not come within the scope of that agreement. (*Waller, supra*, 11 Cal.4th at p. 16 [insured bears the burden of brining a claim within the scope of the policy's insuring agreement].)

Plaintiff contends the Topa policy is a "following form" excess policy that provides coverage on the identical terms as the underlying State National policy, including the UM/UIM coverage provided under the endorsement to the State National policy. He cites the following language in the Topa policy's insuring agreement:

> "The provisions of the Immediate underlying policy are incorporated as a part of this policy except for:
> "(a) any obligation to investigate, defend, or pay for costs incident to the same;
> "(b) the amount of the limits of liability;
> "(c) any 'other insurance' provision; and
> "(d) any other provisions therein which are inconsistent with the provisions of this policy."

The foregoing policy language, plaintiff argues, does not exclude the UM/UIM coverage provided under the State National policy, and under applicable principles of insurance policy interpretation, matters that are not specifically excluded are deemed covered.

The absence of an express exclusion in the Topa policy has no significance unless the insuring agreement can be read to include "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'" [the insuring clause in the UM/UIM endorsement to the State National policy] in the absence of such an exclusion. "[B]efore even considering exclusions, a court must

---

[4]    As discussed, the Topa policy provides coverage for "loss," which is defined as sums paid in settlement of losses for which "the insured is liable."

examine the coverage provisions to determine whether a claim falls within [the policy terms]. [Citations.]" (*Hallmark Ins. Co. v. Superior Court* (1988) 201 Cal.App.3d 1014, 1017.) "[W]hen an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded." (*Glavinich v. Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 270 (*Glavinich*).) The insuring agreement of the Topa policy plainly covers third party liability claims only. The absence of an exclusion for first party UM/UIM claims does not bring such claims within the policy's insuring agreement. (*Ibid.*)

The language of the Topa policy that incorporates the provisions of the State National policy also expressly excepts from incorporation those provisions "which are inconsistent with" the Topa policy. The Topa policy's insuring agreement expressly limits coverage to third party liability claims, and first party UM/UIM coverage would be inconsistent with that limitation. There is no "broad as primary" endorsement. Given these circumstances, the provisions of the Topa policy govern the scope of coverage. (Ostrager & Newman, Handbook on Insurance coverage Disputes, *supra*, § 13.01, and cases cited.)

The "following from" provision in the Topa policy is significantly narrower than the one at issue in *Coca Cola*, a case plaintiff cites for the principle that a "following form" excess policy provides coverage on the identical terms as the underlying primary policy. *Coca Cola* concerned an excess insurer's obligation to provide "drop down" coverage upon the insolvency of the underlying primary insurer. The excess insurer's policy contained a "following form" endorsement that stated in relevant part: """"It is understood and agreed that . . . the terms and conditions of this policy, including all prior endorsements, except with regard to amount of insurance (limits) and premium, are deleted *and replaced in their entirety* by the terms and conditions of the underlying Mission National Insurance Policy No MN 037126 . . . .""" (*Coca Cola, supra*, 11 Cal.App.4th at p. 1182, fn. 1, italics added.) The Topa policy's following form provision is nowhere near as broad. *Coca Cola* is accordingly distinguishable.

10

Although a following form provision was not at issue in *Furlough, supra,* 203 Cal.App.3d 40, the court in that case considered whether UM coverage was afforded by a commercial umbrella policy that supplemented an underlying business auto policy that included UM coverage as required by Insurance Code section 11580.2.  The court in *Furlough* held that no UM coverage was provided under the umbrella policy, reasoning as follows:  "The commercial umbrella policy did not expressly provide uninsured motorist coverage and may not be read to include such coverage.  While every bodily injury motor vehicle liability policy issued or delivered in this state must provide uninsured motorist coverage [citations], neither statutory nor decisional law requires that insurance furnished on an umbrella or excess basis include uninsured motorist coverage. [Citations.]" (*Id.* at p. 47.)

## IV.  Courts in other jurisdictions are in accord

Although no California court has considered the precise coverage issue presented here, courts in other jurisdictions have done so in similar or analogous circumstances and have concluded that UM/UIM coverage is not provided under an excess liability policy that incorporates by reference an underlying primary policy that includes such coverage.

In *Matarasso v. Continental Cas. Co.* (1981) 82 A.D.2d 861 (*Matarasso*), the Appellate Division of the New York Supreme Court considered whether uninsured motorist coverage was available under a commercial umbrella liability policy that incorporated by reference an underlying automobile policy that included an uninsured motorist endorsement.  (*Id.* at p. 862.)  The court held that it did not, basing its decision on the language of the umbrella policy:  "The umbrella policy clearly provides excess protection for [the insured] against liability from third-party claims.  It incorporates the underlying policies insofar as they provide for protection against liability for damages to third parties.  The uninsured motorist coverage provided by the underlying automobile liability policy does not involve claims of liability against the insured from third parties and is not incorporated by the umbrella policy.  Any other interpretation would distort the actual purpose of the umbrella policy." (*Ibid.*)

11

In *Hartbarger v. Country Mut. Ins. Co.* (1982) 437 N.E.2d 691 (*Hartbarger*), the Illinois Appellate Court similarly addressed the issue of whether UM coverage was provided under an umbrella policy that was specifically excess to an underlying automobile policy that included UM coverage. The court concluded it did not, following the reasoning of the court in *Matarasso* that the plain language of the umbrella policy did not include first party UM coverage. (*Hartbarger*, at pp. 692-693.) The court in *Hartbarger* also rejected the insured's argument that the umbrella policy was ambiguous because UM coverage was not specifically excluded: "[T]he failure of the insurer to list uninsured motorist coverage in the exclusions to the umbrella policy does not create any ambiguity in view of the numerous terms limiting the umbrella policy to excess liability coverage. As the defendant correctly argues, exclusions are relevant in construing an insurance policy only when the policy provides coverage in the first place. [Citation.] The umbrella policy did not provide uninsured motorist protection, and thus there was no need to exclude it." (*Id.* at p. 693.)

In *Mazzaferro v. RLI Ins. Co.* (2d Cir. 1995) 50 F.3d 137, the Second Circuit also considered a UM/UIM claim under an umbrella liability policy that provided excess coverage over an underlying automobile liability policy that included such coverage. Although the umbrella policy's insuring agreement limited the insurer's indemnity obligation to third party liability claims, the trial court held the excess insurer responsible for a first party UIM claim, basing its decision on an endorsement to the umbrella policy which stated: "This policy does not apply to Personal Injury or Property Damage arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile unless insurance therefore is provided by a policy listed in the Underlying Insurance Schedule and then only for such coverage as is afforded by such policy." (*Id.* at p. 140.) The Second Circuit reversed, concluding that the trial court's interpretation of the endorsement "squarely contradicts the policy's terms of coverage, which cover liability to third parties only." (*Ibid.*) In so doing, the Second Circuit cited with approval the New York Supreme Court's decision in *Matarasso* and the following language from the Illinois appellate court's decision in *Hartbarger*: "'It is obvious that the present

12

[excess] policy was intended by both parties to protect the insured against excess judgments, and the risks and premiums were calculated accordingly. To require that policy to furnish uninsured motorist coverage would work a substantial revision of that policy.' [Citation.]" (*Mazzaferro, supra*, 50 F.3d at p. 141, quoting *Hartbarger, supra*, 437 N.E.2d at p. 694.)

We find the reasoning of the courts in these other jurisdictions to be persuasive and apply it here. That reasoning is also consistent with California law. (See, e.g., *Foster-Gardner, supra*, 18 Cal.4th at p. 868 [policy language that is clear and explicit governs]; *Glavinich, supra*, 163 Cal. App.3d at p. 270 [occurrence not clearly included within policy's insuring clause need not be specifically excluded]; *Waller, supra*, 11 Cal.4th at p. 16 [court will not indulge a forced interpretation of the insuring agreement to bring a claim within the scope of its coverage]; *Furlough, supra*, 203 Cal.App.3d at p. 47 ["neither statutory nor decisional law requires that insurance furnished on an umbrella or excess basis include uninsured motorist coverage"].)

## V. The policy language is not ambiguous

Plaintiff contends the language of the Topa policy is ambiguous because the limitation to third party liability in paragraph 1 of the insuring agreement must be read together with paragraphs 3(a) and 3(c), which reaffirm the "following form" nature of the policy.

Plaintiff cites the following sentence from paragraph 3(a), which states: "When the immediate Underlying Insurance policy applies to injury or destruction taking place during this policy period, this policy likewise applies to injury or destruction taking place during this policy period." He also cites part of the following sentence from paragraph 3(c): "This policy will follow the form of the immediate underlying policy pursuant to the provisions of subparagraphs 3(a) and 3(b) above" but omits the balance of that sentence, which states: "*and subject to the terms, conditions and limitations of all other provisions of this policy*." (Italics added.) Plaintiff's omission of the relevant limiting language underscores the weakness in his coverage position, which ignores the plain language of the policy limiting coverage to third party liability claims. That limitation

13

applies to paragraphs 3(a) and 3(c) of the insuring agreement. There is no ambiguity in the policy language. The plain language of the Topa insuring agreement unambiguously provides coverage for third party liability claims only.[5]

## DISPOSITION

The judgment is affirmed. Topa is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

---

[5]     In view of our holding, we need not address Topa's alternative argument that the policy excludes coverage for "any liability or obligation imposed on the Insured under any . . . uninsured motorists, underinsured motorists or automobile no-fault or first party personal injury law."

14