BLAKE et al., Appellees,

v.

THORNTON et al.; National Union Fire Insurance Company, Appellant.

[Cite as *Blake v. Thornton,* 182 Ohio App.3d 716, 2009-Ohio-2487.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 91938.

Decided May 28, 2009.

Novak, Robenalt & Pavlik, L.L.P., Thomas D. Robenalt, and Colin Sammon, for appellee Janet Parker.

Mannion & Gray Co., L.P.A., Todd A. Gray; McCormick Barstow, L.L.P., Patrick Fredette, and Timothy J. Puin; Bates & Carey, L.L.P., Barbara I. Michaelides, and Agelo L. Reppas, for appellant.

SEAN C. GALLAGHER, Presiding Judge.

{¶ 1} Appellant, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), appeals the judgment of the Cuyahoga County Court of Common Pleas that (1) granted the motion for partial summary judgment of appellees Nicole Johnson[1] and Janet Parker[2] (collectively "plaintiffs"), (2) denied

---

1. Nicole Johnson, individually and as executor of the estate of Delores Johnson, deceased.

2. Janet Parker, executor of the estate of Lorraine Blake, deceased.

the motion for partial summary judgment of National Union, and (3) declared that the National Union commercial umbrella liability policy provides excess underinsured-motorist coverage to plaintiffs through a "follow-form" endorsement. For the reasons stated herein, we reverse the decision of the trial court.

{¶ 2} This appeal involves a dispute over underinsured-motorist ("UIM") coverage arising from an automobile accident involving plaintiffs' decedents, Delores Johnson and Lorraine Blake. In September 2006, Johnson and Blake were residents of the Owl's Nest, a senior living facility in Cleveland Heights. They, along with three other Owl's Nest residents, were traveling in a minibus that was struck by an oncoming truck driven by Eddie Thornton. Johnson died at the scene, Thornton died from his injuries four months later, and Blake died from an unrelated condition seven months later.

{¶ 3} Associated Estates Realty Corporation ("Associated Estates") managed the Owl's Nest facility and employed the driver of the minibus, Dian Lassiter. Owl's Nest, Ltd., now known as KB Portfolio, LLC, owned the facility. KB Portfolio is affiliated with GH Capital, LLC, a developer and acquisition company.

{¶ 4} Plaintiffs, who are the administrators of Johnson's and Blake's estates, each sued Thornton, Lassiter, Associated Estates, Owl's Nest, Ltd., KB Portfolio, LLC, and certain John Doe defendants for negligence and intentional conduct.[3] The trial court consolidated the actions.[4]

{¶ 5} The claims against Thornton were resolved upon the payment of policy limits by his automobile liability insurer, State Farm Insurance. However, this did not fully compensate the claimants' losses. Through amended complaints, plaintiffs asserted UIM claims against several insurance companies, including National Union and Progressive Preferred Insurance Company ("Progressive"). Plaintiffs also alleged that all insurer defendants had acted in bad faith in denying their claims for UIM benefits.

{¶ 6} Progressive had issued a commercial auto policy under which the minibus was a covered auto and the plaintiffs' decedents were considered insureds. The Progressive auto policy provided for both liability and UIM coverage. Progressive tendered the UIM coverage limits under the policy to the various claimants involved in the accident.

---

3. Lorraine Blake filed her action before she died. Parker, as administrator of Blake's estate, was later substituted as the party plaintiff.

4. The consolidated cases included Cuyahoga County C.P. case Nos. CV–602076 and CV–612951. The court also consolidated case No. CV–614509, filed by Rima Melman, administrator of the estate of another Owl's Nest passenger. The latter case was dismissed with prejudice, and Melman is not a party to this appeal.

{¶ 7} Plaintiffs sought excess UIM coverage under a commercial umbrella liability policy issued by National Union. At the time of the accident, National Union insured GH Capital under the National Union umbrella policy. GH Capital was the named insured under the National Union umbrella policy, and KB Portfolio was added as a named insured by endorsement. The policy defines "insured" to include "any person or organization * * * included as an additional insured under Scheduled Underlying Insurance." The Progressive auto policy was among the scheduled underlying insurance.

{¶ 8} The National Union umbrella policy does not explicitly provide UIM coverage and specifically excludes uninsured-motorist/underinsured-motorist ("UM/UIM") coverage implied by law. However, plaintiffs claimed that excess UIM coverage was provided through an exception to the automobile liability exclusion in the policy's follow-form endorsement. They asserted that the provision incorporated the underlying Progressive policy, which contains UIM coverage, and that the National Union umbrella policy followed the terms of the underlying insurance.

{¶ 9} Plaintiffs ultimately dismissed their claims against all tortfeasor defendants and all insurer defendants except National Union. Plaintiffs and National Union filed motions for partial summary judgment on the UIM coverage issue under the National Union umbrella policy. The trial court granted plaintiffs' motion and denied National Union's motion.

{¶ 10} Following the trial court's ruling on the motions for partial summary judgment, the parties stipulated to plaintiffs' compensatory damages under confidential high-low agreements.[5] Plaintiffs then dismissed their bad-faith claims. The parties filed consent judgment entries, preserving their right to appeal the ruling on UIM coverage, and the trial court dismissed the consolidated action.

{¶ 11} National Union timely filed this appeal, challenging the trial court's ruling regarding UIM coverage under its policy. However, the trial court's ruling was not sufficient to create a final, appealable order, because it merely ruled on the motions for partial summary judgment without declaring the rights of the parties. This court issued a limited remand in order for the trial court to comply with the requirements for a declaratory judgment.

{¶ 12} Upon limited remand, the trial court entered an order that declared that the National Union umbrella policy provides excess UIM coverage to plaintiffs

---

5. The parties filed initial consent entries that the trial court struck from the record because they included the agreements filed under seal. This court granted the parties' agreed motion for leave to supplement the record with the parties' agreements filed under seal.

through the policy's follow-form endorsement. The matter is now properly before us for review.

{¶ 13} National Union raises one assignment of error that argues that "the [trial] court erred in holding that an excess liability insurance policy provides underinsured motorist ('UIM') coverage."

{¶ 14} An appellate court reviews a trial court's granting of summary judgment de novo. *Ohio Government Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 242, 2007-Ohio-4948, 874 N.E.2d 1155. Before summary judgment may be granted, a court must determine that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Dussell v. Lakewood Police Dept.*, 99 Ohio St.3d 299, 300–301, 2003-Ohio-3652, 791 N.E.2d 456, citing *State ex rel. Duganitz v. Ohio Adult Parole Auth.* (1996), 77 Ohio St.3d 190, 191, 672 N.E.2d 654.

{¶ 15} The construction of an insurance contract is a matter of law to be determined by the court. *Chicago Title Ins. Co. v. Huntington Natl. Bank* (1999), 87 Ohio St.3d 270, 273, 719 N.E.2d 955. In interpreting the contract, a court is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." (Citations omitted.) Id. If contract provisions allow for more than one interpretation, the provisions must be strictly construed against the insurer. *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 211, 519 N.E.2d 1380.

{¶ 16} Plaintiffs sought a declaratory judgment that the National Union umbrella policy provides excess UIM coverage. The National Union umbrella policy is a commercial umbrella liability policy that provides excess third-party liability coverage.

{¶ 17} The distinction between first-party UIM coverage and third-party liability coverage is an important one. Unlike the Progressive auto policy that provides first-party UIM coverage to protect an insured against inadequate compensation for his or her losses, the National Union umbrella policy provides

liability insurance for damages the insured is legally obligated to pay to an injured third party. Otherwise stated, liability insurance "is an indemnity agreement which protects the insured against his liability to others" and thus provides third-party liability coverage. *Fid. & Guar. Ins. Underwriters v. Nocero* (Dec. 13, 2001), N.D. Ohio No. 1:01 CV 397, 2001 WL 1792448. On the other hand, the purpose of first-party UM/UIM coverage "is to provide protection to an insured who is legally entitled to recover from the owner or operator of an uninsured or underinsured motor vehicle because of injury to the insured herself." Id.

{¶ 18} Here, the National Union umbrella policy provides excess liability coverage. Consistent with the nature of third-party liability insurance, the policy provides excess protection to the insured for sums that it becomes "legally obligated to pay as damages by reason of liability imposed by law because of Bodily Injury, Property Damage or Personal Injury and Advertising Injury to which this insurance applies." The National Union umbrella policy provides a per-occurrence limit of liability, excess to the limits of certain underlying primary insurance. The National Union umbrella policy makes no reference to providing UIM coverage or uninsured-motorist ("UM") coverage.[6]

{¶ 19} The Progressive auto liability policy was included in the schedule of underlying insurance to the National Union umbrella policy. Although the underlying Progressive auto policy contains UIM coverage, the umbrella policy issued by National Union only provided excess insurance with respect to liability coverage. The two insurance policies are separate and distinct instruments that must be construed independently.

{¶ 20} UM/UIM coverage "is not written into the excess liability policy by operation of law and exists only if it is provided by the contractual terms of the excess policy." See *Carr v. Isaacs* (Apr. 15, 2002), Butler App. No. CA2001–08–191, 2002 WL 553715, quoting *Progressive Am. Ins. Co. v. Vasquez* (1999), 350 N.C. 386, 394–395, 515 S.E.2d 8 (construing North Carolina law). The National Union umbrella policy does not contain any provision that provides UM/UIM coverage. The language of the policy clearly indicates that the policy provides excess protection to the insured against liability to third parties. It is apparent from the plain and ordinary meaning of the policy's terms that the parties to the insurance contract did not contemplate any UM/UIM coverage under the umbrel-

---

6. We recognize that there is a distinction between an excess policy and an umbrella policy. A true excess policy provides coverage above an underlying limit of primary insurance and does not broaden the scope of the underlying insurance. See *Tscherne v. Nationwide Mut. Ins. Co.,* Cuyahoga App. No. 81620, 2003-Ohio-6158, 2003 WL 22724630. An umbrella policy may provide both excess coverage to the underlying insurance and additional primary coverage. See id. The National Union umbrella policy does not provide additional primary UIM coverage.

la policy. As National Union argues, this is further demonstrated by the fact that no premiums were assessed for such coverage under the policy.

{¶ 21} Nevertheless, plaintiffs argue that the National Union umbrella policy contains an "Automobile Liability Follow–Form Endorsement" that incorporates the underlying Progressive auto policy and matches the coverage therein, including the UIM coverage. We are not persuaded by their argument.

{¶ 22} The follow-form endorsement in the National Union umbrella policy is an exclusion to the policy and provides as follows:

Section V. EXCLUSIONS is amended to include the following additional exclusion:

Automobile Liability

This insurance does not apply to any liability arising out of the ownership, maintenance, operation, use or entrustment to others of any Auto owned or operated by or rented or loaned to any Insured. Use includes operation and loading or unloading of any Auto.

However, this exclusion will not apply if coverage is provided for Bodily Injury or Property Damage by Scheduled Underlying Insurance.

Coverage under this policy for such Bodily Injury or Property Damage will follow the terms, definitions, conditions and exclusions of Scheduled Underlying Insurance, subject to the Policy Period, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by Scheduled Underlying Insurance.

{¶ 23} The above endorsement is a policy exclusion for automobile liability. Plaintiffs assert that the exclusion does not apply when coverage is provided by scheduled underlying insurance, and in such instances, coverage follows the form of the underlying policy, including the UIM coverage provided therein. We do not construe the follow-form endorsement so broadly, as it is a policy exclusion and is not an affirmative grant of coverage. As further discussed below, the follow-form endorsement contains an exception to a policy exclusion that incorporates the underlying Progressive auto policy insofar as it provides automobile liability coverage for bodily injury or property damages to third parties. It does not expand coverage to include UIM protection, which was never provided for under the National Union umbrella policy.

{¶ 24} As a policy exclusion, the endorsement cannot be read to expand coverage beyond that which is provided by the policy in the first instance. See *Allstate Ins. Co. v. Johnston* (D.Kan.2004), 339 F.Supp.2d 1191, 1196. This is because an exclusion does not create coverage, but excludes it. *Eastlake v. St. Paul Fire & Marine Ins. Co.* (Jan. 22, 2008), N.D. Ohio No. 1:07 CV 1867, 2008

WL 203392. Thus, an exception to an exclusion cannot create coverage where the coverage is not provided in the insuring agreement. See *Ohio Valley Livestock Corp. v. Val Decker Packing* (July 21, 1982), Miami App. No. 81 CA 63, 1982 WL 3763.

{¶ 25} Plaintiffs are attempting to read UIM coverage into the National Union umbrella policy through the policy exclusion. This is something they cannot do. The exclusions are irrelevant if UM/UIM is not provided under the insuring agreement. National Union never agreed to provide excess UM/UIM coverage, and the parties to the insurance contract, who negotiated the exclusions therein, could not have contemplated that those exclusions would apply to UM/UIM coverage that was never provided for under the policy.

{¶ 26} We conclude that because UIM coverage is not included in the National Union umbrella policy, it was not encompassed by the policy follow-form endorsement. It is clear from the National Union umbrella policy that the parties never intended UIM coverage to be provided by the policy and, therefore, there could be no negotiated exclusions intended to be implied to UIM coverage.

{¶ 27} As stated in *Allstate Ins. Co. v. Johnston*, 339 F.Supp.2d at 1196, "the policy provides excess liability coverage, not uninsured motorist protection. The policy's coverage clearly states that the insurer 'will pay when an insured becomes legally obligated to pay for personal injury or property damage' caused by the insured. The umbrella policy's purpose is not to benefit Defendants due to losses sustained from uninsured motorists, but to provide additional protection for Defendants against the claims of third parties. The umbrella policy's exclusions become relevant when interpreting the insurance policy only when the policy provides coverage in the first place."

{¶ 28} The issue presented herein was also addressed in *Matarasso v. Continental Cas. Co.* (N.Y.App.1981), 82 A.D.2d 861, 440 N.Y.S.2d 40. In *Matarasso*, the claimants sought UM coverage under a "Commercial Umbrella Liability Policy" issued by the defendant insurance company. Id. The umbrella policy protected the insured against claims by third parties in excess of the total applicable limits of liability of certain underlying liability policies, including an automobile liability policy. The umbrella policy, which incorporated by reference provisions of the underlying policies with respect to liability coverage, did not include UIM coverage.

{¶ 29} In concluding that the UIM endorsement in the underlying automobile liability policy did not apply to the umbrella policy, the *Matarasso* court stated: "The umbrella policy clearly provides excess protection for [the insured] and his business against liability from third-party claims. It incorporates the underlying policies insofar as they provide for protection against liability for damages to third parties. The uninsured motorist coverage provided by the underlying

automobile liability policy does not involve claims of liability against the insured from third parties and is not incorporated by the umbrella policy. Any other interpretation would distort the actual purpose of the umbrella policy." Id. at 862, 440 N.Y.S.2d 40. The same conclusion was reached in *Mazzaferro v. RLI Ins. Co.* (C.A.2, 1995), 50 F.3d 137. We adopt this reasoning herein and find that the National Union umbrella policy does not incorporate the UIM coverage provided in the Progressive auto policy, let alone provide excess coverage thereto.

{¶ 30} Finally, we reject plaintiffs' argument that because the National Union umbrella policy does not specifically exclude UIM coverage, that silence allows UIM coverage to be included through the follow-form endorsement. Here again, "the failure of the insurer to list uninsured motorist coverage in the exclusions to the umbrella policy does not create any ambiguity in view of the numerous terms limiting the umbrella policy to excess liability coverage. As the defendant correctly argues, exclusions are relevant in construing an insurance policy only when the policy provides coverage in the first place. The umbrella policy did not provide uninsured motorist protection, and thus there was no need to exclude it." (Citation omitted.) *Hartbarger v. Country Mut. Ins. Co.* (1982), 107 Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691, 693. Accordingly, we reject plaintiffs' argument that the follow-form endorsement creates coverage that otherwise does not exist under the National Union umbrella policy.

{¶ 31} For these reasons, this court concludes that the National Union umbrella policy cannot be read as providing umbrella coverage against damage by uninsured and underinsured motorists. Furthermore, plaintiffs are not entitled to UIM coverage under the National Union umbrella policy, as no such coverage exists. Because the language of the policy is clear and unambiguous, there is no need to address the extrinsic evidence referred to by the parties.

{¶ 32} For the above reasons, we reverse the ruling of the trial court, grant National Union's motion for partial summary judgment, deny plaintiffs' motion for partial summary judgment, declare that the National Union umbrella policy does not provide excess UIM coverage for plaintiffs' losses, and grant judgment in favor of National Union as a matter of law. As we deem further relief requested by National Union to be just, we also vacate the consent judgments entered for plaintiffs in the high amounts under the confidential high-low agreements.

Judgment reversed.

BLACKMON and CELEBREZZE, JJ., concur.