[Cite as *Motorists Mut. Ins. Co. v. King*, 2014-Ohio-2519.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| MOTORISTS MUTUAL INSURANCE COMPANY | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiff-Appellee | : |  |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA00231 |
| JESSE D. KING, ET AL | : |  |
|  | : |  |
| Defendants-Appellees | : | O P I N I O N |

OWNERS INSURANCE COMPANY

Intervenor-Appellant


CHARACTER OF PROCEEDING: Civil appeal from the Stark County Court of Common Pleas, Case No. 2013CV01410

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: June 9, 2014

APPEARANCES:

For Intervenor-Appellant-Owners Insurance

For Plaintiff-Appellee - Motorists Mutual Insurance


BRIAN WINCHESTER
PATRICK GUMP
123 West Prospect Avenue, Ste. 250
Cleveland, OH 44115

JAY CLINTON RICE
GALLAGHER SHARP
Sixth Floor, Bulkley Bldg.
1501 Euclid Avenue
Cleveland, OH 44115

For Belden Village Auto Sales
MERLE EVANS III
Millennium Centre, Ste. 300
200 Market Avenue N.
Canton, OH 44701

*Gwin, P. J.*

{¶1} Appellant appeals the October 20, 2013 judgment entry of the Stark County Court of Common Pleas granting summary judgment to appellees and finding Motorists Mutual owes no insurance coverage to King or American Tire, is under no obligation to defend or indemnify King or American Tire, and is under no obligation to pay any judgment which may be rendered against King or American Tire.

*Facts & Procedural History*

{¶2} On January 13, 2012, Jesse D. King ("King") was in an automobile accident in a 2004 Jeep Liberty. On October 23, 2012, Gregg and Deborah Clark, the other parties involved in the automobile accident with King in January of 2012, filed suit against King, American Tire, and Belden Village Auto, seeking damages for their injuries sustained in the accident. The Clarks' case was subsequently dismissed and re-filed. Belden Village Auto ("BVA") is a used car dealership that routinely purchases vehicles for re-sale. Many of these vehicles need to be repaired or refurbished prior to re-sale, but BVA does not typically perform these services and often sends its vehicles to other businesses in Stark County for service and maintenance work. American Tire is one of the businesses that BVA utilizes for service and maintenance work and the two have done business for approximately fifteen (15) years. As a courtesy to its customers, American Tire sends an employee such as King to pick up the vehicles to be serviced. BVA owned the 2004 Jeep Liberty that King was driving on the day of the accident.

{¶3} On May 24, 2013, appellee Motorists Mutual Insurance Company ("Motorists") filed a complaint for declaratory judgment to determine whether it had any

obligation under their insurance policy with BVA to King or American Tire for claims arising out of the January 13, 2012 auto accident. Motorists issued a policy to BVA for the policy period of March 1, 2011 to March 1, 2012. Appellant Owners Insurance Company ("Owners") filed a motion to intervene on September 10, 2013, stating they are the insurance carrier for American Tire. The trial court granted the motion to intervene on September 27, 2013. Owners filed an intervening complaint on October 9, 2013 and contended the vehicle was being delivered, demonstrated, or tested at the time of the accident and thus Motorists owed a duty to defend and indemnify King and American Tire.

{¶4} Motorists filed a motion for summary judgment on September 19, 2013 and argued that neither King nor American Tire is an insured under their policy issued to BVA because King was using the 2004 Jeep Liberty while working in the business of servicing and repairing automobiles for American Tire. Attached to the motion for summary judgment was the affidavit of John Pizzino ("Pizzino"), owner and president of BVA. The affidavit stated that BVA is a used car dealership that routinely purchases vehicles for re-sale and that many of these vehicles need to be repaired or refurbished prior to re-sale, but BVA does not typically perform these services and often sends its vehicles to other businesses for service and maintenance work. Further, that on January 13, 2012, BVA contacted Gary Brison of American Tire and requested American Tire performed various services on the 2004 Jeep Liberty, including a safety check, changing of the oil and oil filter, and lubricating the vehicle. Pizzino stated that BVA utilized American Tire for fifteen (15) years and it has always been the policy of American Tire to send an employee to BVA to pick up the vehicles to be serviced as a

courtesy to its customers and BVA is not charged a fee for this service. In the affidavit, Pizzino stated the following with regards to King: King was an employee of American Tire at the time he arrived at BVA on January 13, 2012 to pick up the 2004 Jeep Liberty; that King was sent to BVA for the sole purpose of picking up the 2004 Jeep Liberty in order to drive and deliver it to American Tire's business location so that American Tire could perform the safety check and other services requested by BVA; that no one at BVA provided any instructions, directions, or guidance to King regarding the subject vehicle, its operation, or the route to take back to American Tire; that BVA did not instruct King as to the manner or mode in which the vehicle was to be driven or the route over which it was to be driven; that King was not an employee of BVA on January 13, 2012, or at any other time; and that King's accident on January 13, 2012 occurred while he was using a BVA vehicle while he was working in the scope and course of his employment for American Tire, a business engaged in the servicing and repairing of automobiles. Pizzino also asserted that Gary Brison of American Tire assured Pizzino on various occasions before January 13, 2012 that American Tire had automobile liability insurance that would provide for BVA in the event of an accident while an agent of American Tire was operating a vehicle owned by BVA, including any time an American Tire agent was driving a BVA auto to and from American Tire for servicing and repairs.

{¶5} Owners filed a brief in opposition to the motion for summary judgment on October 9, 2013. Owners argued the "Haulaway" provision of the Motorists policy provides coverage to King and/or American Tire and that whether King was an agent of

BVA is a material issue necessary for resolution to interpret the insurance contract and this is a question for the trier of fact.

{¶6} The trial court granted Motorists' motion for summary judgment on October 20, 2013. The trial court found King was not an employee of BVA, was working for American Tire at the time of the accident, and American Tire was in the business of servicing and repairing automobiles wholly independent of BVA. Further, that Owners failed to submit any Civil Rule 56(C) evidence and thus failed to place in dispute the nature of the relationship between King and BVA. The trial court determined King and American Tire are not "insureds" as defined by the Motorists policy of insurance with BVA. Thus, the trial court concluded that Motorists owes no insurance coverage to King or American Tire, is under no obligation to defend or indemnify King or American Tire, and is under no obligation to pay any judgment rendered against King or American Tire.

{¶7} Owners appeals the October 20, 2013 judgment entry of the Stark County Common Pleas Court and assigns the following as error:

{¶8} "I. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE'S MOTION FOR SUMMARY JUDGMENT."

I.

*Summary Judgment*

{¶9} Civ.R. 56 states, in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

{¶10} A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶11} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review

the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶12} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrates absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

{¶13} Owners contends the trial court erred because a genuine issue of material fact exists as to whether King was an agent or servant of BVA and that the trial court erred in failing to address or find the "Haulaway" endorsement in the Motorists policy applicable. We disagree.

*Insurance Policy*

{¶14} The construction of an insurance contract is a matter of law to be determined by the court. *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St.3d 270, 719 N.E.2d 955 (1999). In interpreting the contract, a court is to give effect to the intent of the parties to the agreement. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256 (2003). In doing so, "[w]e examine the insurance contract as a whole and presume that the intent of the parties is reflected in the

language used in the policy. We look to the plain and ordinary meaning of language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* The general rule of liberal construction cannot be employed to create an ambiguity where there is none. *Progressive Max Ins. Co. v. Grange Mut. Cas. Co.*, 8th Dist. Cuyahoga No. 81656, 2003-Ohio-4564. "Only where a contract of insurance is ambiguous and, therefore, reasonably susceptible to more than one meaning must the policy language be construed liberally in favor of the insured who drafts the instrument." *Id.*

{¶15} Under the "Garage Coverage Form" of the Motorists policy with BVA, it states that, "we will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from 'garage operations' involving the ownership, maintenance or use of covered 'autos.'" Section (II)(A)(2). It is well settled that "a person is not an insured under the liability provisions of an automobile insurance policy unless defined by the terms of the policy as an insured." *Stoner v. Ford*, 5th Dist. Morrow No. CA926, 2002-Ohio-514. Section (II)(A)(3)(a) of the Garage Coverage Form further provides as follows:

> The following are "insureds" for covered "autos":
>
> (1) You for any covered "auto"
>
> (2) Anyone else while using with your permission a covered
>
> "auto" you own, hire, or borrow except:
>
> * * *

(c) Someone using a covered "auto" while he or she is
working in a business of selling, servicing, repairing, parking
or storing "autos" unless that business is your "garage
operations."

(3) Anyone liable for the conduct of an "insured" described
above but only to the extent of that liability.

{¶16} Several courts in Ohio have found that this exclusionary language provided in Section (II)(A)(3)(a)(2)(c) applies so that the driver is not an "insured" under an insurance policy. *Westfield Ins. v. Reitler,* 3rd Dist. Crawford No. 3-93-16, 1994 WL 43856 (Feb. 4, 1994); *Shelby Mut. Ins. Co. v. Pelic*, 11th Dist. Trumbull No. 3982, 1988 WL 112366 (Oct. 21, 1988). Further, in *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597 (1955), the Ohio Supreme Court held that when the owner of an automobile arranges with a service station for the servicing of his automobile and, at the time of making such arrangements, it is agreed that an employee of the station will ride home with the customer and drive his automobile back to the station for servicing, and where the owner does drive home and surrenders his car to the employee to be driven back to the station for servicing, the owner is not responsible for the negligence of the station employee in driving the automobile back to the service station. *Id.* at syllabus. The Ohio Supreme Court reasoned that after the owner relinquished the automobile to the service station employee, he relinquished any right to control the mode or manner of doing the work for which he had contracted. *Id.*

{¶17} Owners contends that whether King was an agent or servant of BVA on the date of the accident is a genuine issue of material fact that must be determined by a

trier of fact. Whether an individual is an agent is usually a question for the trier of fact. *Estate of Rhome v. USCCS, Ltd. Partnership*, 5th Dist. Stark No. 2006CA00185, 2007-Ohio-2618. However, when the facts are not in dispute, the trial court is permitted to grant summary judgment. *Id.,* citing *Osborne v. Lyles*, 63 Ohio St.3d 326, 587 N.E.2d 825 (1992); see also *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988). In this case, Motorists submitted with its motion for summary judgment the affidavit of Pizzino, the owner and President of BVA. Pizzinio states that BVA does not typically perform repair or refurbishing of the vehicles and thus BVA often sends its vehicles to other businesses for service and maintenance work. In Pizzino's affidavit, he avers that BVA has utilized American Tire for fifteen (15) years and that it has been the policy and practice of American Tire to send an employee to BVA to pick up the vehicles to be serviced as a courtesy to its customers and that American Tire does not charge a fee for this service. The affidavit further states that King was never an employee of BVA, that no one provided him with instructions, directions or guidance regarding the vehicle or its operation, and that BVA did not instruct King as to the manner or mode in which the vehicle was to be driven or the route over which it was to be driven. Pizzino concludes his affidavit by stating that King's accident on January 13, 2012 occurred while King was using a BVA vehicle while he was working in the scope and course of his employment for American Tire, a business engaged in the servicing and repairing of automobiles.

**{¶18}** As Motorists met their evidentiary burden to establish there is no issue of material fact as to whether King was as agent of BVA on the date of the accident, Owners has the reciprocal burden to point to evidentiary material that suggests

summary judgment is not warranted. No contrary Civ.R. 56(C) evidence was presented by Owners to indicate that King was an agent of BVA on January 13, 2012. The record does not support the contention that BVA maintained control or had the right to control the mode and manner of the servicing of the 2004 Jeep Liberty.

{¶19} In this case, King and/or American Tire do not fall within the definition of "insured" because the undisputed evidence is that picking up and delivering the vehicle was part of the service provided by American Tire as a courtesy to its customers free of charge. See *Westfield Ins. Co. v. Reitler*, 3rd Dist. Crawford No. 3-93-16, 1994 WL 43856 (Feb. 4, 1994). The policy definition of an "insured" specifically excepts someone like King who was using a covered "auto" while working in a business of selling, servicing, repairing, parking or storing autos unless that business was BVA's "garage operations." The unrebutted evidence demonstrates that King was using a covered auto while working in the scope and course of his employment for American Tire, a business engaged in the servicing and repair of automobiles wholly independent of BVA. Accordingly, we find no genuine issue of material fact exists as to whether King was an agent or servant of BVA and that neither King nor American Tire qualify as an "insured" under the Motorists policy.

*"Haulaway" Endorsement and Exclusion*

{¶20} Also included in the Motorists insurance policy with BVA is an endorsement to the Garage Coverage Form titled "Haulaways Not Covered." The endorsement modifies the Garage Coverage Form and provides that liability coverage does not apply to a covered "auto" which is a haulaway owned, hired, or held for sale by you. However, "this exclusion does not apply: (a) while a haulaway held for sale by you

is being delivered, demonstrated, or tested." Owners contends that, because of this provision, King and American Tire are "insureds" under the Motorists policy.

**{¶21}** An endorsement cannot be read to expand coverage beyond that which is provided by the policy in the first instance because "an exclusion does not create coverage, but excludes it. Thus, an exception to an exclusion cannot create coverage where the coverage is not provided in the insuring agreement." *Blake v. Thornton*, 182 Ohio App.3d 716, 2009-Ohio-2487, 914 N.E.2d 1102 (8th Dist.). Exclusions are irrelevant if coverage is not provided under the insuring agreement and are relevant in construing an insurance policy only when the policy provides coverage in the first place. *Id.* In this case, the "Haulaway" endorsement did not broaden or modify the definition of who is an insured for the purposes of liability coverage under the Motorists policy and there is nothing ambiguous about who is insured. See *Progressive Max Ins. Co. v. Grange Mut. Cas. Co.*, 8th Dist. Cuyahoga 81656, 2003-Ohio-4564. As discussed above, neither King nor American Tire qualify as insureds under Motorists' policy. Accordingly, the "Haulaway" endorsement is not relevant because the policy does not provide coverage in the first place. Thus, the "Haulaway" endorsement cannot be read to expand coverage beyond that which is provided by the Motorists policy.

{¶22} Based on the foregoing, we find the trial court did not err in granting summary judgment to Motorists.  The October 20, 2013 judgment entry of the Stark County Court of Common Pleas granting summary judgment is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur