NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0398n.06

Case No. 24-4024

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 13, 2025
KELLY L. STEPHENS, Clerk

THOMAS D. RABLE, Administrator of the estate of Atsushi Tanaka, deceased, )
)
Plaintiff-Appellant, )
)
v. )
)
SOMPO AMERICA INSURANCE COMPANY, )
)
Defendant-Appellee. )
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

**OPINION**

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** Atsushi Tanaka died in a car accident with an allegedly underinsured semitruck. Tanaka's Estate sued Sompo America Insurance Co. for underinsured motorist coverage and umbrella coverage under his employer's insurance policies. The district court dismissed the Estate's claims because the policies do not provide coverage. We affirm.

**I.**

Thomas Rable administers the Estate of Atsushi Tanaka, who died in a 2022 collision with a semitruck that had stopped in the road in front of him and reversed to avoid missing a turn. The semitruck driver's insurance company paid the Estate its $1 million policy limit minus a $7,043.98 property-damage lien, but the Estate calculated its damages at over $2.1 million. The Estate sought the excess from Sompo America Insurance Company, Tanaka's employer's insurance company, under its $1 million underinsured-motorist (UIM) endorsement attached to its auto policy and under its $10 million umbrella policy, but Sompo refused to pay.

The Estate sued Sompo in Ohio state court, asserting claims for declaratory judgment, breach of contract, and bad-faith denial of coverage. Sompo removed the lawsuit to federal court and moved to dismiss the complaint, arguing that the Estate has no right to recover under the policies. The district court granted the motion, explaining that the semitruck was not underinsured because the Estate had received $1 million—the same as the UIM policy limit—from the semitruck's insurer and that the umbrella policy unambiguously does not provide UIM coverage. Rable appeals.

## II.

We review both the district court's decision to dismiss the complaint and its interpretation of the insurance policy de novo. *Dakota Girls, LLC v. Philadelphia Indem. Ins. Co.*, 17 F.4th 645, 648 (6th Cir. 2021). Because we sit in diversity, we apply Ohio substantive law, *id.*, which interprets insurance policies using standard contract rules, *Acuity, A Mut. Ins. Co. v. Progressive Specialty Ins. Co.*, 229 N.E.3d 1, 4 (Ohio 2023). We assume that a contract's language reflects the parties' intent, and we apply "the plain meaning of the policy's language 'unless another meaning is clearly apparent from the contents of the policy.'" *Motorists Mut. Ins. Co. v. Ironics, Inc.*, 200 N.E.3d 149, 155 (Ohio 2022) (citation omitted). If the insurance policy's terms are unambiguous, we "look no further than the writing itself to determine the parties' intent[,]" but if the terms are ambiguous—"susceptible to more than one reasonable interpretation"—we interpret them against the insurer. *Id.* at 155–56. "[O]ne seeking to recover on an insurance policy generally has the burden of proving a loss and demonstrating coverage under the policy." *Sanzotta v. Devor*, 208 N.E.3d 193, 199 (Ohio Ct. App. 2023) (quoting *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 418 N.E.2d 1381, 1383 (Ohio 1981)). "We 'may affirm [the district court] on any ground

supported by the law and the record.'" *Fisher v. Perron*, 30 F.4th 289, 296 (6th Cir. 2022) (citation omitted).

**III.**

The Estate argues that it is entitled to coverage under the UIM endorsement to the auto policy and under the umbrella policy because it incorporates the UIM endorsement.

The UIM endorsement to the auto policy covers the compensatory damages that an insured is entitled to recover from an underinsured vehicle. The UIM endorsement defines an underinsured vehicle as:

> [A] land motor vehicle for which the sum of all liability bonds or policies applicable at the time of an "accident" is either:
>> **a.** Less than the limit of liability for this coverage; or
>> **b.** Reduced by payments to others injured in the "accident" to an amount which is less than the limit of liability for this coverage.

**A.**

The semitruck was not an underinsured vehicle under subsection (a) of the definition. The Estate does not dispute that the semitruck was insured for $1 million—the same as the Sompo UIM endorsement limit. Instead, the Estate argues that policy language requires us to compare the semitruck's $1 million policy limit to the umbrella policy's $10 million policy limit. We disagree.

Under the UIM endorsement, a vehicle is underinsured if the sum of the "policies applicable" to it are less than the liability limit for "this coverage[.]" Nothing suggests that a reference to "*this* coverage" within the UIM endorsement refers to the separate umbrella policy—the underlying insurance documents refer to the separate parts, including the UIM endorsement, as "coverages," suggesting that "this coverage" does not refer to all the insurance policies applicable to Tanaka. *See This*, Merriam-Webster.com, https://www.merriam-

webster.com/dictionary/this (defining "this" as "being the person, thing, or idea that is present or near in place, time, or thought or that has just been mentioned" or "being the nearer at hand or more immediately under observation or discussion"). The plural "policies" in "policies applicable" likewise does not point to the umbrella policy because it refers to those applicable to the allegedly underinsured vehicle, not the insured.

As a fallback, the Estate contends that because the umbrella policy's declaration page lists the auto policy, and the auto policy includes UIM coverage, the umbrella policy includes UIM coverage up to its $10 million limit or is at least ambiguous.

Ohio courts have rejected the idea that an umbrella policy automatically adopts the coverages of underlying policies. In *Gilkey v. Grange Mutual Casualty Co.*, No. 16-CA-12, 2016 WL 6600001 (Ohio Ct. App. Nov. 1, 2016), an insured sought UIM coverage from an umbrella policy based on the same argument the Estate brings here—that because the umbrella policy's declarations page listed the underlying policy that included UIM coverage, the umbrella policy must also include UIM coverage or at least be ambiguous. *Id.* at *2. The Ohio Court of Appeals rejected that argument because the declarations page identified the underlying coverages to notify the insured that the underlying policies must be active to receive umbrella coverage—it did not say it was incorporating the underlying policies' coverages into the umbrella policy. *Id.* at *4. The court explained that umbrella coverage "does not drop down to 'cover' underinsured motorist liability" and "need not provide the same coverage as an underlying insurance policy." *Id.* at *4–5. What matters is whether the umbrella policy's language, read in its entirety, incorporates the UIM benefits. *Id.*; *see Arn v. McLean*, 825 N.E.2d 181, 188 (Ohio Ct. App. 2005) (rejecting a similar argument because an umbrella policy does not cover risks that the underlying policy does not cover

and "[b]y the same token, the mere fact that a particular type of risk is covered in an underlying policy does not mean that it is also covered by the umbrella policy").

The Estate insists that *Gilkey* and *Arn* are distinguishable and that we should instead follow *Switalski v. Clevenger*, No. 360391, 2023 WL 5313038, at *5 (Mich. Ct. App. Aug. 17, 2023), in which the Michigan Court of Appeals accepted the same argument. But *Gilkey* and *Arn* are not meaningfully distinguishable. True, in each, the Ohio Court of Appeals had additional reasons to deny umbrella coverage, but it still rejected versions of the Estate's argument and underscored the importance of a comprehensive reading of the policy language. *Gilkey*, 2016 WL 6600001, at *4–5; *Arn*, 825 N.E.2d at 188. We are not free to ignore those cases. Absent an Ohio Supreme Court case on point, we make an "*Erie* guess" about how it would decide, viewing Ohio Court of Appeals decisions as persuasive "unless it is shown that the state's highest court would decide the issue differently." *Innovation Ventures, LLC v. Custom Nutrition Lab'ys*, *LLC*, 912 F.3d 316, 334 (6th Cir. 2018) (quoting *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013)). The Estate cites nothing that suggests the Ohio Supreme Court would decide differently.

Turning to the policy language, we conclude that the umbrella policy unambiguously does not provide UIM coverage. First, the umbrella policy only covers damages for which the insured is liable, not damages the insured suffered. It "pay[s] on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which this insurance applies." The "ultimate net loss" is "the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments[.]"

Nothing in the umbrella policy suggests that listing the underlying auto policy on the declarations page incorporates the UIM endorsement, and the ultimate-net-loss provision confirms

that the parties never intended it to. *See Blake v. Thornton*, 914 N.E.2d 1102, 1106–07 (Ohio Ct. App. 2009) (interpreting a similar provision in an umbrella policy and holding that the policy provided excess coverage for liability to third parties, so it unambiguously did not provide UIM coverage, despite the umbrella policy's listing the underlying insurance on its schedule page); *Seifke v. Bond*, No. 22333, 2008 WL 3586902, at *1, *5 (Ohio Ct. App. Aug. 15, 2008) (same); *Gilkey*, 2016 WL 6600001, at *4 (similar, where the umbrella policy stated that it did not cover bodily injury to the insureds). The Estate's contrary authority is not from Ohio and is inapposite because those policies contained contradictory language excluding but seemingly including UIM coverage. *See Lindsay v. Owners Ins. Co.*, No. CIV. 12-5066, 2013 WL 12412013, at *4–6 (D.S.D. July 25, 2013); *Stubbe v. Guidant Mut. Ins. Co.*, 651 N.W.2d 318, 323–24 (Wis. Ct. App. 2002).

Second, the umbrella policy only mentions UIM coverage in two places, and neither incorporates UIM coverage. One is in a provision adding exclusions for "if Excess Uninsured and/or Underinsured Motorists Coverage is attached," but UIM coverage is not listed in the umbrella policy's "schedule of coverage forms and endorsements attached to this policy[.]" The other is in a provision excluding UIM coverage by operation of law. Excluding UIM coverage by operation of law makes sense in a policy that does not itself provide UIM coverage. An explicit provision excluding UIM coverage is unnecessary because a policy need not exclude coverage that it does not provide. *Blake*, 914 N.E.2d at 1104, 1108–09 (concluding that there was no UIM coverage under umbrella policy that didn't specifically exclude UIM coverage but excluded it under operation of law).

**B.**

The Estate fares no better under subsection (b) of the definition. It argues that because the $1 million payment from the semitruck's insurer was reduced by a $7,043.98 property-damage

lien, it was "[r]educed by payments to others injured in the 'accident' to an amount which is less than the limit of liability for this coverage."

Under Ohio law, UIM coverage "is not and shall not be excess coverage to other applicable liability coverages" and "shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Ohio Rev. Code § 3937.18(C). The insured's expenses, like a lien from the insured's medical treatment or the insured's attorneys' fees, still count toward the UIM policy limit, but another's expenses, like a medical lien for services provided to someone else, do not. *Gilliland v. Nationwide Prop. & Cas. Ins. Co.*, 936 N.E.2d 524, 526–29 (Ohio Ct. App. 2010) (summarizing applicable caselaw). The district court concluded that the lien counted toward the UIM policy limit, so the reduction could not entitle the Estate to additional UIM benefits.

The Estate now describes the lien as "a claim of an unrelated party seeking money for property damages caused by the [semitruck driver's] recklessness[,]" so in its view, it was the semitruck driver's responsibility and should not count toward the UIM coverage limit. But the complaint contains no information about the nature of the lien—the Estate raises that factual allegation for the first time in its appellate brief. "We 'will not entertain on appeal factual recitations not presented to the district court when reviewing a district court's decision.'" *Martinez v. Wayne County*, -- F.4th --, No. 24-1474, 2025 WL 1733451, at *11 (6th Cir. June 23, 2025) (quoting *Bormuth v. County of Jackson*, 870 F.3d 494, 500 (6th Cir. 2017) (en banc)); *see Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2006).

The Estate asks us to look at the language of the UIM policy rather than Ohio's prohibition of excess recovery. But even if we did, the Estate's bare allegation that the $1 million was reduced by a property-damage lien hardly alleges that the $1 million was "[r]educed by payments to others

injured in the 'accident[.]'" *See Dakota Girls, LLC*, 17 F.4th at 651 (affirming the district court's dismissal of insurance-coverage claims when the plaintiff alleged facts consistent with breach of the policy rather than the specific facts the policy term required).

**IV.**

Because we conclude that the Estate is not entitled to coverage under the UIM endorsement to the auto policy or under the umbrella policy, we affirm the district court's dismissal of the Estate's claims.

AFFIRMED.